IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| FAPD, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:18-cv-00428 |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff filed this lawsuit on April 3, 2018, ECF No. 1, alleging one count of breach of contract and one count of insurance bad faith pursuant to 42 Pa C.S. § 8371. Defendant timely filed its Motion to Dismiss Plaintiff's Bad Faith Claim (Count II) for Failure to State a Claim and Motion for More Definite Statement, ECF No. 10. For the reasons that follow, both Motions are denied.

### I. Background

According to the Complaint, Plaintiff, a Pennsylvania limited liability company, operates a medical office building in Pittsburgh. (Compl., ECF No. 1, ¶¶ 4, 7, 8.) On or about September 12, 2017, a water pipe broke, and water leaked into the elevator shafts in Plaintiff's building causing damage. (*Id.* ¶ 7, 9, 11.) Plaintiff contacted its elevator service company, Hadfield Elevator Company ("Hadfield") to service the damaged elevators. (*Id.* ¶ 10.) Plaintiff did not contact its insurer, Defendant Auto-Owners Insurance Company ("Auto-Owners") at the time the damage occurred because it believed the necessary service costs would not exceed its high deductible. (*Id.* ¶ 12.)

1

However, on October 17, 2017, Plaintiff received an invoice from Hadfield in the amount of $52,225.37. (*Id.* ¶ 12.) Plaintiff filed a claim with Auto-Owners on October 23, 2017, forty-one (41) days after the damage occurred. (*Id.* ¶ 13.) Plaintiff alleges that Auto-Owners was able to inspect the premises, including the elevator shafts, where the loss occurred; it was able to interview Plaintiff's employees and Hadfield's workers; and Plaintiff made all of its records available. (*Id.* ¶¶ 17, 18.) In accordance with the terms of the policy, Plaintiff also submitted a Sworn Statement in Proof of Loss to Auto-Owners, dated November 6, 2017, which listed $3,789.50 for cleaning expenses and $69,888.00 in elevator expenses, which Plaintiff based on its several received invoices from Hadfield. (*Id.* ¶¶ 14–18.)

Auto-Owners initially denied the claim via a denial letter dated January 2, 201[8].[1] (*Id.*) In the denial letter, a copy of which is attached to the Complaint, Auto-Owners stated:

> It is a policy condition to provide us with prompt notice of the loss and give us an opportunity to inspect the damages. Given the fact the loss was submitted to us approximately 41 days after the loss occurred and the repairs had been completed, we were unable to properly inspect the claimed damage.

(ECF No. 1-6, at 4.) The letter includes portions of the applicable policy, which provided for conditions and duties in the event of loss or damage. The policy stated:

> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> (1) Notify the police if a law may have been broken.
> (2) Give us **prompt notice** of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or

---

[1] The date, specifically the year "2017," on the denial letter appears to be a typo. The actual date is January 2, *2018* in light of the fact that the damage preceding the filing of a claim occurred in September of 2017. (See ECF No. 1-6, at 1.)

2

> damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
> (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> (8) Cooperate with us in the investigation or settlement of the claim.

(*Id.* at 3 (emphasis added).) The letter also included the following language: "[I]f you have any questions or have any additional facts that would cause us to change our coverage position, please contact me immediately." (*Id.* at 4.)

Shortly after the January 2018 denial letter, Plaintiff realized it misconstrued Hadfield's prior invoices, and the true cost of repairs actually totaled $123,457.57. (Compl., ECF No. 1, ¶ 20.) With the new numbers, Plaintiff resubmitted its claim on March 10, 2018. (*Id.* ¶ 22.) At this time, Plaintiff also informed Auto-Owners that it had retrieved a "majority" of the parts that were replaced and were now available for inspection by Auto-Owners. (*Id.*) Auto-Owners denied the claim via a second denial letter on March 21, 2018, without examining the retrieved parts. (*Id.* ¶ 23.)

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The Court need not accept as true any unsupported conclusions, unsupported inferences, and "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Motion for a More Definite Statement

This Court aptly explained the legal standard for a motion for a more definite statement in *Lamb v. Richards Snow & Ice Removal*:

> Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," a party may move for a more definite statement. Fed. R. Civ. P. 12(e). However, Rule 12(e) motions are "highly disfavored since the overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden of unearthing factual details on the discovery process." *A.M. Skier Agency, Inc. v. Creative Risk Services, Inc.*, No. 05-cv-0451, 2006 WL 167762, at *12 (M.D. Pa. Jan. 20, 2006) (quoting *Hughes v. Smith*, No. 03-cv-5035, 2005 WL 435226, at *4 (E.D. Pa. Feb. 24, 2005)); *see also Schaedler v. Reading Eagle Publications, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967) ("Although the motion for a more definite statement continues to exist in rule 12(e), it is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading.").
>
> In deciding Rule 12(e) motions, the prevailing standard employed by Third Circuit courts is to grant a Rule 12(e) motion "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008) (citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232–33 (D.N.J. 2003)). Rule 12(e) should not be used to

4

>    obtain information "which presents a proper subject for discovery." *Id.* (citing *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142–43 (D. Del. 1960)). Rule 12(e) motions should be granted based on "unintelligibility, not lack of detail." *Wood & Locker, Inc. v. Doran & Assoc.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989). Whether a Rule 12(e) motion should be granted is "a matter committed largely to the discretion of the district court." *MK Strategies*, 567 F. Supp. 2d at 737 (citing *Clark*, 213 F.R.D. at 232).

No. 17-cv-28, 2017 WL 6352401, at *1 (W.D. Pa. Dec. 11, 2017) (Gibson, J.).

### III. Discussion

#### A. Motion to Dismiss

Count II of Plaintiff's Complaint, brought pursuant to 42 Pa. C.S. § 8371, alleges that Auto-Owners was fully capable of ascertaining Plaintiff's loss, yet refused to do so; therefore, Defendant acted in bad faith when it denied the claim for coverage under the insurance policy. In order to succeed on a bad faith claim pursuant to 42 Pa. C.S. § 8371, an insured must prove that the insurer (1) did not have a reasonable basis for denying benefits under the insurance policy; and (2) knew or recklessly disregarded its lack of reasonable basis for denying the claim. *Nw. Mut. Life. Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004)). Among other conduct, "bad faith" pursuant to § 8371 includes: "an unreasonable delay in handling claims; a frivolous or unfounded refusal to pay; a failure to communicate with the insured; acting in a dilatory manner . . . . A bad faith claim may also arise when an insurance company conducts an inadequate investigation." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 630–31 (W.D. Pa. 2014) (citations omitted).

Auto-Owners argues that Plaintiff's bad faith claim cannot survive as a matter of law because Plaintiff admits that it waited over a month to submit the initial claim after repairs had

5

begun (and which turned out to be based on incorrect loss amounts), preventing Auto-Owners from properly inspecting the claimed damages. Auto-Owners relies on the "prompt notice" requirement of the policy as evidence of Plaintiff's own non-compliance. (Def.'s Br. in Supp., ECF No. 11, at 10.)

The parties agree this is a "late-notice" case, but the parties disagree on the applicable law for the bad faith claim. Plaintiff points to *Brakeman v. Potomac Insurance Co.* for the proposition that an insurer must show prejudice in order to justify denying coverage on the basis of late notice alone. 371 A.2d 193 (1977). (Pl.'s Br. in Opp'n, ECF No. 13, at 2.) Defendant argues that *Brakeman* is not applicable to bad faith claims brought pursuant to § 8371, but even if it was, it is distinguishable on its facts from this case and thus inapplicable. (Def.'s Br. in Supp., ECF No. 11, at 11.)

The Supreme Court of Pennsylvania in *Brakeman* stated that:

> We have in the past excused a condition of forfeiture where to give it effect would have been purely arbitrary and without reason, and we are of the opinion that, in the absence of prejudice to the insurance company, such a situation exists in the context of a late notice of accident. Allowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable.

*Brakeman*, 371 A.2d 197–98 (internal citations omitted). The late-notice defense (untimely notice plus prejudice) is an affirmative defense against coverage, not a direct affirmative defense to a claim of § 8371 Bad Faith. *Waldman v. Pediatric Servs. of Am., Inc.*, No. 97-cv-7257, 1999 WL 259845, at *2 n.1 (E.D. Pa. Apr. 30, 1999). But Auto-Owners has based its denial of coverage (both in its first and second denial letters) on the late notice and inability to ascertain cause of loss. Plaintiff's theory of bad faith is that (1) denial of coverage on the basis of late notice without suffering prejudice is not a reasonable basis for denying benefits under the

6

insurance policy, and (2) with respect to the second denial, Auto-Owners knew or recklessly disregarded its lack of reasonable basis for denying the claim by choosing not to inspect the recovered parts. (Compl., ECF No. 1, at 5.) Thus, the Court concludes that the *Brakeman* late-notice test is an appropriate first step to determine whether Plaintiff can show a prima facie case of § 8371 bad faith, as it is bound up with whether Auto-Owners had a reasonable basis for denying benefits and whether it knew or recklessly disregarded its lack of reasonable basis. "[An insurer's] decision to deny [p]laintiff's claims due to late reporting cannot be construed as reasonable under section 8371's bad faith standard unless it can show that the late reporting caused it prejudice." *Waldman*, 1999 WL 259845, at *2 (applying *Brakeman*'s prejudice test to an § 8371 bad faith claim). Therefore, the Court must decipher whether, based on the facts alleged in the Complaint and documents attached thereto, Auto-Insurer suffered prejudice as a matter of law from the late reporting, thereby precluding a plausible claim for bad faith at the motion to dismiss juncture.[2] The Court cannot answer this question in the affirmative on the pleadings alone.

In its initial denial letter, dated January 2, 2018, Auto-Owners based its "prejudice" on the fact that it could not "confirm the cause of loss and damages resulting." (January 2, 201[8], Denial Letter, ECF No. 1-6, at 4.) But it also informed Plaintiff in its initial denial letter that it should contact Auto-Owners "if you have any . . . additional facts that would cause us to change our coverage position." (*Id.* at 4.) However, the Complaint states that Plaintiff retrieved the

---

[2] *Hyde* examined prejudice as a matter of law in Pennsylvania, and it noted that when a plaintiff conducted settlement negotiations and made crucial litigation decisions without notifying its insurers, the insurer has a "strong case" for prejudice. 969 F. Supp. at 300–01. *Hyde* surveyed other cases, noting courts have held prejudice as a matter of law when notice arrives after the litigation was settled. 969 F. Supp. at 300 (citing *Clemente v. Home Ins. Co.*, 791 F. Supp. 118, 120 (E.D. Pa. 1992), *aff'd*, 981 F.2d 1246 (3d Cir. 1992), and *Metal Bank of Am., Inc. v. Ins. Co. of N. Am.*, 520 A.2d 493, 498 (1987)). Yet, other courts have left the question for the jury. *Life & Health Ins. Co. of Am. v. Federal Ins. Co.*, No. 92-cv-6736, 1993 WL 326404, at *2 (E.D. Pa. Aug. 25, 1993).

discarded parts *after* the first denial letter in January 2018.[3] Upon retrieving most of the damaged and replaced elevator parts, Plaintiff made them available for inspection, but this time Auto-Owners denied the claim without any such investigation. Thus, the Complaint pleads the bad faith claim based on Auto-Owners' conduct with respect to the events and Auto-Owners' conduct surrounding the second denial because at that juncture, Auto-Owners had sufficient information to ascertain the loss but refused to examine it. *Rowe*, 6 F. Supp. 3d at 630–31 ("A bad faith claim may also arise when an insurance company conducts an inadequate investigation.")

Taking the allegations in the Complaint as true, it is plausible that Auto-Owners was not prejudiced by the delay from the date of the loss to the date that the second or supplemented claim was submitted, March 10, 2018, in light of the fact that it had sufficient records, information, *and* original parts to ascertain the cause and extent of damage that would be otherwise covered under the policy. Auto-Owners based its initial denial on the initial set of documentation it received, concluding the documentation was insufficient to show cause of loss and resulting damages. (ECF No. 1-6, at 1.) Auto-Owners then left the door open for more information to be submitted "that would cause us to change our coverage position." (*Id.* at 4.) When Plaintiff then retrieved the damaged parts for Auto-Owners' inspection, Auto-Owners "declined" to take a look to see if it would "change [its] coverage position." (ECF No. 1 ¶ 38.) *See Berko Investments, LLC v. State Nat'l Ins. Co.*, No. 08-cv-2609, 2010 WL 2853731 (E.D. Pa. July 21, 2010) (finding prejudice following a bench trial when the property in question was replaced and discarded before the insurer could inspect it).

---

[3] The Complaint fails to make any discernable claim for § 8371 bad faith based on the first denial letter, especially since the Complaint admits that Plaintiff miscalculated or misstated expenses on the initial sworn statement. (Compl., ECF No. 1 ¶ 20.)

This plausibility—that there was no prejudice as a result of the delay in light of the recovered parts—would defeat Auto-Owners' affirmative defense of late notice, and this would also meet the first element of a bad faith claim: that the insurer had no reasonable basis for denying benefits under the policy. Plaintiff's allegations that Auto-Owners knew or recklessly disregarded its lack of reasonable basis for denying the claim by choosing not to inspect the recovered damaged parts goes to the second element of the bad faith claim. In short, Plaintiff has demonstrated a plausible claim for relief on its bad faith claim but only to the extent that it relates to the second denial on March 21, 2018.

Auto-Owners may be correct that Plaintiff's collection of a "majority" of the replaced parts may have been insufficient for Auto-Owners to ascertain the cause of the loss and extent of the damage, but Auto-Owners has failed to show that an inability to reproduce each and every replaced part demonstrates prejudice as a matter of law, especially when Auto-Owners did not inspect any of the replaced parts. Auto-Owners also may have a winner in its argument that it was prejudiced because it was unable to field competing bids for the repairs (although Plaintiff counters in its brief that Hadfield was the only authorized servicer).[4] (ECF No. 11, at 14.) But this too is an argument for a later stage, such as a motion for summary judgment, when the Defendant can introduce facts into the record. At this stage, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Fair Wind Sailing, Inc.*, 764 F.3d at 308 n.3.

B.  **Motion for a More Definite Statement**

Auto-Owners argues that the Complaint merely sets out the dispute as to whether Auto-

---

[4] Furthermore, the crux of Plaintiff's argument is that it was Auto-Owners' failure to inspect any part after the submission of the second claim, on March 10, 2018, so the delay in Plaintiff's reporting is more than forty-one (41) days (which is a calculation of the date of loss to the date of the *first* claim submission). Whether that affects the prejudice analysis is a factual issue to be addressed at a later juncture.

Owners suffered prejudice, but it fails to set forth a theory for how that failure evidences bad faith. Auto-Owners asks this Court to require Plaintiff to "set forth more specifically as to why and how Defendant did not have a reasonable basis for denying coverage . . . ." (Def.'s Br. in Supp., ECF No. 11, at 15.) The Court concludes that the Complaint sufficiently sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's pled theory is neither vague nor ambiguous, and Paragraphs 38–41, specifically, provide the requisite specificity for Defendants to understand the basis for this bad faith claim. After Auto-Owner provided Plaintiffs an opportunity to submit more information in support of its claim (ECF No. 1-6, at 4), Plaintiff retrieved most of the parts for Defendant to examine, yet Defendant refused to do so despite knowing that any intention of relying on a late-notice denial requires a showing of prejudice. (ECF No. 1, ¶¶ 38, 39.) Plaintiff also pleads that Auto-Owners was in fact able to ascertain the loss. (*Id.* ¶ 41.)

The Complaint sufficiently pleads a plausible claim for bad faith.

## IV. Conclusion

For the reasons stated in this Opinion, Auto-Owners' Motion to Dismiss Plaintiff's Bad Faith Claim (Count II) for Failure to State a Claim, ECF No. 10, is denied. Auto-Owners' Motion for a More Definite Statement, ECF No. 10, is denied. Auto-Owners shall file its Answer to Plaintiff's Complaint, ECF No. 1, on or before August 3, 2018.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: July 17, 2018
cc:     All counsel of record